May it please the court. This March when I went to the sentencing with Michael Anderson, he was 25, never been to prison, never been convicted of a crime of violence, never been arrested for a crime of violence. His sentencing guidelines were 15 to 21 months. The mother of his three children had written a letter describing what a wonderful father he was. I was flabbergasted, which is not a legal argument, when he received 120 months. There are three issues that are all of equal and important merit, I think. One is the rare situation when a sentence is based on an incorrect factual determination, and that is the judge's statement and the only reason he gave for the sentence that Mr. Anderson had a propensity to commit criminal acts with firearms. The extent of the departure was also unreasonable, and the fact of the departure itself was unreasonable. It would be foolish of me, even though I don't agree with the factual finding the judge made concerning the events that had occurred two years before Mr. Anderson's crime, in this case, which was making a false statement when he tried to buy a gun, that there was some sort of crime committed, an assault. It's true that he was shot. It's true they found his gun with the safety on, unfired. Whether that meant he was part of some sort of, I use the colorful term, like, which, again, probably doesn't matter, but even if that was all true, to conclude that he had a propensity to commit criminal acts with firearms and the public safety demanded that he receive the statutory maximum for this offense of making a false statement, I would urge you to conclude is beyond the pale of what can be accepted by this court as reasonable. There was some testimony presented about these incidents, wasn't there? The incident? Yes, there was testimony. There was a witness, essentially, some police officers, about physical evidence, but a witness who described firing a gun. There was a person in the car she was driving that had been shot, and Mr. Anderson also was shot and showed up at the hospital. He wasn't in the car. I don't, like I said, even if you accept the judge's conclusion that that showed that two years before these events, Mr. Anderson had been in a group of people who were responsible for some crime that was never charged, I don't know how you go from that to the conclusion that his character was so bad that he deserved the statutory maximum. The probation officer who met him, spent an hour with him, verified his background, his education, high school graduation, his technical school, he didn't recommend any upward variances, he recommended a downward variance. The judge really didn't know Mr. Anderson other than the brief time he spent in court with him, and that's the way our system works. But the conclusion that somebody has propensity is not like making a credibility determination of a witness that you're seeing, and this court isn't. It's not even making a conclusion about the sufficiency of evidence to show a drug quantity or an amount of money lost. This is a character judgment justifying a sentence that is, although we don't go by measurement, certainly as big an upward departure as could possibly be conceived of. In my brief... I don't mean to be flippant about this, but Mr. Anderson attracts bullets the way honey attracts flies? He seems to be in the wrong place at the wrong time. That may be true, but I don't know if that's a justification for giving him a bigger sentence. That's true. If he just happened to make bad choices, think about one of George Washington's famous maxims of personal behavior, it's better to be alone than in bad company. He seems to have, for whatever reason, been around a lot of bad company. But there again, that doesn't go to the merits of the sentence, I suppose. Or the character, the Al Cap cartoon character, Joe Blitzes, who had bad luck above his head all the time. He ought to be old enough to remember that. You and I are old enough for a high cert, man. The government made no argument based on any other fact of Mr. Anderson's life than this incident we're talking about. The judge mentioned no other fact of Mr. Anderson's life other than the incident we're talking about. And I suppose you can make the observation you made, Your Honor, but that doesn't change what the judge said he based his decision on, and I think it would be wrong. I suppose we might as well talk about it. It's true that Mr. Anderson in self-defense shot somebody a couple years, a year and a half prior to these events. Police officers testified that he admitted it. Police officers testified there was a number of witnesses. He was never arrested for it. If we're going to conclude that somebody deserves a greater penalty for making a false statement when they tried to buy a gun, because that shows they have a propensity to criminally use firearms, well then every police officer who was charged with a crime and in their past has not criminally, has used a firearm lawfully, every soldier who shot people and then commits a crime with a gun is subject to that very same argument. The government didn't make that argument, and the judge didn't rely on that. My brief has a collection of cases that are all approved upward departures, and they're not there to demonstrate that this departure was bigger than past departures. They're there so you can look at the reasons district court judges gave for the sentences that they imposed. Every one of those cases has a far more extensive description or justification for the sentence imposed. And the justifications break into two categories, what the actual crime was, it deserves more than the guidelines account for, or things in the defendant's background, convictions, not convictions, that were basically harmed other people, that's generally what happened. I didn't have any cases in my brief that reversed departures, because there are very few involving upward departures, upward departures are rare. Most judges have far more, and my brief tried to illustrate, have far more extensive descriptions of why they imposed the sentence they imposed. When this court reverses a downward variance, a great number of them, and there was one... We don't do that as much anymore. Yeah, well, there's still more of them, you don't, Your Honor. You did one, you had one case, I was going to mention that, 2014, involving a police officer who had made a false report, a police officer had done something very bad, and your reason for the reversal, this is Nysays v. Dautvich, and I gave the prosecutor this case too, your reason was the crime was much worse, and the judge's downward variance just didn't fit that crime. Was that a post-Gaul decision? Yeah, it was, 2014 is post-Gaul. Those are very rare. Again, the name of the case? Yes, that's D-A-U-T-O-V-I-C, and I'll give you a 28-J letter, 763-539-27. That's one kind of reversal for a departure, where the judge's sentence just doesn't fit the crime. And what would our opinion, what would the one-paragraph syllabus say if we adopted your reasoning? How would we give for a reversal? In four sentences, unreasonable. The sentence was based on an erroneous finding of fact concerning the defendant's character for which there was not sufficient evidence, and the sentence imposed in light of the crime and the defendant's background was unreasonable. Both the departure itself and the extent of the departure was not justified. That was, I don't write judicial opinions, so that's the best I could do. Mr. Tilson, would you like to reserve some time there? Oh, I suppose I'd better. Thanks, Judge. Very well. Good morning. May it please the Court? Jack Kester on behalf of the government. I would like to correct one thing that Mr. Tilson just said. He actually did cite a case in his brief where an upward variance was reversed, but it was a pre-Gaul case. That was the Roulard case cited in Mr. Tilson's brief, and that was a situation where the guideline range was 30 to 37 months on a firearm case, and the district judge imposed a sentence of 120 months, the statutory maximum. And this Court later explicitly disavowed the holding in Roulard in light of Gaul, because before Gaul, extraordinary circumstances were required to justify either a downward variance or an upward variance. Post-Gaul, that has all changed, and extraordinary circumstances are no longer required. I want to just quote what the district court said at the sentencing hearing. There's been a lot of discussion about the propensity to use firearms. Here's what the district court said. I also would make a reference specifically that there is a need to protect the public from Mr. Anderson's propensity to use firearms in criminal activity, especially, especially in the instance that has been proven up here today, referring to this ambush assault with a shootout. Now, at the outset of the sentencing hearing, the district court noted that it had carefully reviewed the pre-sentence report, and the pre-sentence report listed no less than three separate instances with Mr. Anderson's involvement with firearms. The first incident was in November of 2011. In the pre-sentence report, they document that Mr. Anderson was apparently trying to enter a nightclub armed with a gun. He was denied admittance. A responding police officer saw Mr. Anderson walking with an apparent bulge in his waistband and place an object in his car. The officer confronted Mr. Anderson. It turns out he had a bag with about 15 grams of marijuana in his pocket. And the car was searched, and they found a revolver, a .357 revolver, along with a set of digital scales. And it turns out that revolver was stolen. Mr. Anderson pled guilty to unlawful use of a weapon for carrying a concealed weapon. He was placed on probation. About a year later, in November of 2012, he's pulled over for a traffic violation. Officers find two bags of marijuana, a set of brass knuckles, and a quantity of ammunition in the interior of the car. And then they later find a 9mm semi-automatic pistol in the trunk, which that pistol also turned out to be stolen. So while he's on probation, he's caught with another stolen gun. And then a third incident in the pre-sentence report documented that in 2017, Mr. Anderson was apparently passed out drunk behind the wheel of a car with the motor running at a gas pump. Responding officers arrived, and Mr. Anderson, when he woke up, tried to quickly shove a loaded pistol under the front driver's seat. Mr. Anderson, he pled guilty to unlawful use of a weapon for possession of a firearm while intoxicated. All of those incidents were documented in the pre-sentence report. And then, of course, the district court heard extensive testimony about this, what it referred to as an ambush assault resulting in a shootout. And it's all in the sentencing transcript, but a young lady who was only 17 years of age at the time testified about what happened. Mr. Anderson, along with three other men, all armed with weapons and wearing masks, approached a parked car, and one of the people that Mr. Anderson was with fired a shot into the back seat and struck one of the occupants in the back seat. And this young lady, Ms. Williams, she grabbed the gun that they had in their car and returned fire and struck Mr. Anderson. Mr. Anderson arrived at that incident with an AR-15-style rifle that was loaded with 31 rounds of ammunition. And as the district court said, it's the court's position that it's very fortunate that one or more people were not killed in this shootout. And I wholly disagree with the defendant's statement about his involvement. And then the court went on to make the statement about Mr. Anderson's propensity to use firearms, especially in the instance of this ambush assault. And as Judge Wollman indicated before as well, he's also been, by his own admission, there were a number of unsolved homicides that law enforcement officials questioned Mr. Anderson about. A man named Jimmy Walker was murdered in Cape Girardeau, I believe, in 2017. And Mr. Anderson admitted that he was with Mr. Walker. He accompanied him to a strip club in Illinois. Then they ended up hanging out in a parking lot in Cape Girardeau. According to Mr. Anderson, he was standing right outside a car. Mr. Walker was sitting in the car. An unknown subject quickly approaches the car and starts shooting at Mr. Walker, killing him. And according to Mr. Anderson, by his own account, he pulled out his gun and returned fire. This unknown subject then fled through an alleyway. And Mr. Anderson, he admitted that the first thing he does, he goes and throws the gun into the Mississippi River. And then the other incident, a man named Quentin Combs was murdered in 2015. And Mr. Anderson admitted to the police that he was responsible for killing Mr. Combs. But by his own self-serving account, he said it was an act of lawful self-defense. According to Mr. Anderson, he exchanged words with Mr. Combs, something about him appearing to be high on drugs. And Mr. Combs took exception to that and began shooting at Mr. Anderson. Mr. Anderson draws his own weapon and shoots and kills Mr. Combs. And then he gives that firearm to a relative, and it's ultimately disposed of. So there is plenty in the record to show that Mr. Anderson did have a propensity to use firearms. And that finding is well supported by the record. I think a major flaw with the appellant's position, you simply have to look to the remedy he's seeking. He's not just asking this court to reverse and remand for resentencing. The appellant is asking for this court to instruct the district court that it cannot impose a sentence above 37 months' imprisonment. That's the relief he's seeking in his brief. And there is simply no authority for that, for this court to instruct the district court to impose a sentence 83 months lower than what he felt appropriate. In fact, that is directly in conflict with Gall and the subsequent line of cases. As this court is well aware in Gall, the Supreme Court explicitly rejected any sort of a mathematical approach to sentencing, a percentage-based approach to sentencing. It was sometimes referred to as a proportionality test. And Gall recognized that deviations from the guideline range will always appear more extreme, at least in percentage terms, when the range itself is low. The Supreme Court recognized that a mathematical approach would simply be unworkable. In fact, the Supreme Court said trying to implement such an approach would be like, quote, attempting to measure an inventory of apples by counting oranges. It's simply unworkable. Well, let's see. And in this case, talking about the extremes, what was the guideline range? It was 15 to 21 months. And there's no question this was a significant upward variance. To how many months? 120 months. In view of your lengthy description of this man's activities, isn't it more than passing strange that the probation officer would have recommended, suggested the possible downward variance? It's been my experience that it's fairly common for the probation office to recommend downward variances, and I can't speak for why they decided to recommend that. In this instance... Maybe I haven't read enough pre-sentence reports. I didn't realize that was the case. Did the district court at all acknowledge that? The district court acknowledged at the outset of the hearing that it had reviewed the pre-sentence report in detail. Well, that we know. I mean, we have to. But he did not specifically address the probation officer's recommendation for a downward variance. I don't think there was any obligation that the district court say anything about it. But I found it, in light of your recitation of this man's, shall we say, unfortunate choice of companions and the consequences thereof, and yet the probation officer thought, well, for whatever it's worth. Certainly not binding on the district court nor on us. That's correct. And just in the remaining seconds... Yes, the government did file a motion for an upward variance. I see my time has nearly expired. Thank you. Very well. Thank you, Mr. Patrick. I have about 30 seconds. I'd like 90. I'll give you 60. The other incidents in Mr. Anderson's record, an awful use of a weapon under Missouri law, which covers a lot of conduct, none of them involve the use of a firearm, as that term is used in the law. In the United States v. Bailey, what the Supreme Court told us, what the word use means, active use. He was drunk in a car. That's against the law if you have a gun in the car. He was carrying a concealed weapon when he was 17 years old. That's against the law. None of them involved active use of a gun. So it's really a mischaracterization of his past to say that he's committed criminal acts. He's a danger to the public because he's hurt people with guns. It's just not true. Even the incident that was proven, that he's in this group of people, somebody got shot. It's not true, and the government doesn't really claim it's true, that he fired a shot or he personally hurt somebody. With respect to the unsolved homicides, one of them is unsolved. That's Mr. Walker. The other one, my client has admitted that he shot somebody in self-defense. The government's never challenged that. It would be their burden to challenge that. The authorities in Cape Girardeau, having plenty of witnesses, chose not to prosecute that case. That might say something more about what's going on in Cape Girardeau than it does about Mr. Anderson. The last thing I want to comment on is my suggested remedy, which was a suggestion. If you read the transcript, Judge Limbaugh, at the start of this sentencing proceeding, asked the government why in the world they had dismissed one of the two counts. There's two statutes that cover making a false statement when attempting to purchase a gun, and it suggested that they could have got all the extra time just by not dismissing a count, and the prosecutor explained to him that really they'd have to be concurrent sentences anyway, under the sentencing guidelines and probably the double jeopardy clause. And then later on in the transcript, Judge Limbaugh suggested that Mr. Anderson committed a crime of violence when he attempted to purchase a firearm, and when he did not check the box, saying not that he was a felon, because he wasn't, but he had been charged with a felony possession crime. And that was a crime of violence. We had an exchange about that. You took 90. I'm not going to give you 120. Okay. Thank you. The last thing, the 37 months. No, you're done. Okay. Thank you. Case is submitted. We appreciate the arguments today. It'll be decided in due course. Mr. Shade, please call our third case.